**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

AMICA MUTUAL INSURANCE
COMPANY,
    *Plaintiff*.,

    v.

YHERESIS MILLAN, JEANNE SILLIMAN,
JONATHAN KELO,
    *Defendants*.

No. 3:25-cv-00036-(VAB)

**RULING AND ORDER ON SUMMARY JUDGMENT MOTION**

In this insurance coverage action, Amica Mutual Insurance Company ("Amica") seeks a declaratory judgment against Jonathan Kelo, Yheresis Millan, and Jeanne Silliman (collectively, "Defendants") that it has no duty to defend or indemnify Yheresis Millan under Jeanne Silliman's Personal Automobile Policy or Personal Umbrella Liability Policy for claims asserted by Jonathan Kelo in the underlying action arising from the June 18, 2022 incident. Compl., ECF No. 1, at 1, 7–9.

Amica alleges that Millan is not covered under either policy because he was using Silliman's vehicle "without a reasonable belief" that he was entitled to do so. Compl. ¶¶ 20–29, ECF No. 1, at 7–9. Amica now moves for summary judgment on both counts. Mot. for Summ. J., ECF No. 19.

For the reasons stated below, Amica's motion for summary judgment is **GRANTED**.,

Amica Mutual Insurance Company has no duty to defend or indemnify Yheresis Millan under either Jeanne Silliman's Personal Automobile Policy or Jeanne Silliman's Personal

Umbrella Liability Policy for claims asserted by Jonathan Kelo in the underlying action arising from the June 18, 2022 incident.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

Amica brought this declaratory judgment action to determine its rights and obligations under a Personal Automobile Policy and a Personal Umbrella Liability Policy issued to Jeanne Silliman with respect to claims asserted against Yheresis Millan in the underlying Kelo action. Compl., ECF No. 1, at 1.

The Personal Automobile Policy insured Silliman's 2007 Audi A4, and both that policy and the Personal Umbrella Liability Policy contain exclusions for a person using a vehicle without a reasonable belief that he is entitled to do so. Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 1-5, ECF No. 19-2, at 1-5.

On June 18, 2022, Silliman reported the Audi stolen after she saw it leave her driveway, and police later identified Millan as the driver of the stolen vehicle. Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 6, 8, 13, ECF No. 19-2, at 5; Ex. C, ECF No. 19-5, at 20.

Millan allegedly was operating Silliman's vehicle when he collided multiple times with the vehicle Jonathan Kelo was operating, and Millan later was found guilty of stealing Silliman's vehicle. Ex. F, ECF No. 19-8, at 15; Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 17, 19–21, ECF No. 19-2, at 6.

### B. Procedural History

On January 8, 2025, Amica filed its Complaint against Jonathan Kelo, Yheresis Millan, and Jeanne Silliman. Compl., ECF No. 1.

On January 9, 2025, summonses issued as to Jonathan Kelo, Yheresis Millan, and Jeanne Silliman. Summonses, ECF No. 11.

On March 10, 2025, Jonathan Kelo filed an Answer to the Complaint. Answer, ECF No. 13.

On August 28, 2025, Amica filed its motion for summary judgment, together with a memorandum of law, a Rule 56(a)(1) Statement, and supporting exhibits. Mot. for Summ. J., ECF No. 19.

On August 28, 2025, Amica also filed the required notice to self-represented litigants under Federal Rule of Civil Procedure 56 and Local Rule 56. Notice to Self Represented Litigants, ECF No. 20.

No Defendant filed an opposition to the motion for summary judgment.

## II. STANDARD OF REVIEW

A court will grant a motion for summary judgment if the record shows no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of *'*the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any*,'* which it believes demonstrate the absence of a genuine issue of material fact.").

The non-moving party may defeat the motion by producing sufficient evidence to establish that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "[T]he mere existence of *some* alleged factual dispute between the

parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48.

"[T]he substantive law will identify which facts are material." *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*; *see Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("[M]ateriality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." (citing *Anderson*, 477 U.S. at 248)).

"The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. When a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the non-moving party must do more than vaguely assert the existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (internal quotation marks omitted).

The party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.* (internal quotation marks omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 250 (citing *Dombrowski v. Eastland*, 387 U.S. 82, 87 (1967) and *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968)).

A court must view any inferences drawn from the facts in the light most favorable to the party opposing the summary judgment motion. *See Dufort v. City of New York*, 874 F.3d 338, 343, 347 (2d Cir. 2017) ("On a motion for summary judgment, the court must 'resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought.'").

A court will not draw an inference of a genuine dispute of material fact from conclusory allegations or denials, *see Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011), and will grant summary judgment only "if, under the governing law, there can be but one reasonable conclusion as to the verdict," *Anderson*, 477 U.S. at 250.

## III. DISCUSSION

### A. The Declaratory Judgment Claim on the Automobile Policy

Because this is a diversity action, Connecticut substantive law governs interpretation of the Auto Policy, and federal procedural law governs whether summary judgment is warranted. See *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (stating that "[u]nder the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law"); *Hanna v. Plumer*, 380 U.S. 460, 471 (1965) (stating that "[w]hen a situation is covered by one of the Federal Rules . . . the court has been instructed to apply the Federal Rule").

In Connecticut, "[c]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo" and that "[i]f the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning." *R.T. Vanderbilt Co. v. Continental Casualty Co.*, 273 Conn. 448, 456, 462, 870 A.2d 1048 (2005) ). "It is the function of the court to construe the

5

provisions of the insurance contract and, if no material facts are at issue, the question of whether coverage exists is a question of law that is appropriately decided on a motion for summary judgment." *Peerless Ins. Co. v. Disla*, 999 F.Supp. 261, 263 (D. Conn. 1998).

The Auto Policy provides liability coverage for damages for which "any insured becomes legally responsible because of an auto accident," and provides that Amica "will settle or defend, as [it] consider[s] appropriate, any claim or suit asking for these damages." Pl.'s L.R. 56(a)(1) Stmt. ¶ 4, ECF No. 19-2, at 1–2 (quoting the Auto Policy's insuring agreement that "[w]e will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident" and that Amica "will settle or defend, as we consider appropriate, any claim or suit asking for these damages").

The policy further defines an insured to include "[a]ny person using your covered auto," but excludes coverage for any insured "[u]sing a vehicle without a reasonable belief that that insured is entitled to do so." *Id*.

Amica alleges that "there is no coverage available to Yheresis Millan because although he may qualify as an 'insured' under Jeanne Silliman's Auto Policy because he is 'any person using your covered auto,' his use of the auto falls within the exclusion for any insured 'using a vehicle without a reasonable belief that that insured is entitled to do so.'" Compl. ¶ 20, ECF No. 1, at 7.

Amica alleges that, although Millan may qualify as an insured because he is "any person using your covered auto," his use falls within the exclusion for "using a vehicle without a reasonable belief that that insured is entitled to do so." Compl. ¶ 20, ECF No. 1, at 7.

Jonathan Kelo has not submitted any opposition materials to the motion, and in his Answer, as to Count One, he repeatedly states that he "lacks sufficient knowledge and leaves the

Plaintiff to their burden of proof." Answer ¶¶ 19–23, ECF No. 13, at 2–3 (stating, as to Count One, that Kelo "lacks sufficient knowledge and leaves the Plaintiff to their burden of proof").

Amica argues that the undisputed record shows that Millan stole Jeanne Silliman's vehicle, fled from police, and was later found guilty of stealing that vehicle; so, he could not have had a reasonable belief that he was entitled to use it. Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 19-1, at 1, 11 (arguing that the Auto Policy "excludes coverage for drivers that do not have a reasonable belief they have permission to operate the insured vehicle" and that "there is no coverage for Mr. Millan under either policy").

The Court agrees.

"Under Connecticut law, "many factors are relevant to 'the determination of whether any belief that the defendant may have had, that he was entitled to drive the vehicle, was reasonable.'" *Progressive Casualty Ins. Co. v. Monaco*, No. 16-cv-823 (VAB), 2017 WL 2873051, at *11(D. Conn. July 5, 2017)(quoting *Nicholas v. Amica Mut. Ins. Co.*, No. CV94047942, 2002 WL 845697, at *7 (Conn. Super. Ct. Apr. 4, 2002)). Such "factors include (1) whether the driver had express permission to use the vehicle; (2) whether the driver's use of the vehicle exceeded the permission granted; (3) whether the driver was legally entitled to drive under the laws of the applicable state; (4) whether the driver had any ownership or possessory right to the vehicle; and (5) whether there was some form of relationship between the driver and the insured, or one authorized to act on behalf of the insured, that would have caused the driver to believe he was entitled to drive the vehicle." *Id.* (citation and internal quotation marks omitted).

The issue thus is whether the record reveals a genuine dispute of material fact as to whether Millan reasonably believed that he was entitled to operate Silliman's vehicle. See

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that a party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record materials "which it believes demonstrate the absence of a genuine issue of material fact"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (stating that "[t]he substantive law will identify which facts are material" and that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

No genuine dispute of material fact exists as to that issue. On June 18, 2022, Silliman "reported her vehicle, a gray Audi sedan, as stolen," and, while unloading items from her trunk for a tag sale, "saw her vehicle leave the driveway," "realized her vehicle was taken by an unknown person," and "called the police." Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 6, 8, ECF No. 19-2, at 5 (stating that Silliman "reported her vehicle, a gray Audi sedan, as stolen" and that she "realized her vehicle was taken by an unknown person and called the police"); *see also* Ex. C, ECF No. 19-5, at 20 (stating that the victim "observed her vehicle backing out of the driveway," that a witness observed "what she believed to be a black male in the drivers seat backing the victims vehicle out of the driveway," and that "[u]pon realizing the accused was taking her vehicle the victim called 911.").

The record further reflects that police pursued the Audi as a stolen vehicle and identified Millan as its driver. Norwich Police Patrol Officer Christopher Nott "observed the stolen vehicle drive past him at a 'high rate of speed,'" "activated his lights and sirens and pursued the stolen vehicle," and that Connecticut State Police, including Kelo, "continued the pursuit of the vehicle." Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 10–12, ECF No. 19-2, at 5 (stating that Officer Nott "observed the stolen vehicle 'high rate of speed,'" "activated his lights and sirens," and that state

police "continued the pursuit"). Officer Nott "immediately recognized that it was the stolen vehicle," that "the operator of the vehicle did not obey the police vehicle overhead lights and sirens," and that state troopers later located the Audi after it crashed. Ex. C, ECF No. 19-5, at 16 (stating that the officer "immediately recognized that it was the stolen vehicle" and that "the operator of the vehicle did not obey the police vehicle overhead lights and sirens"). "The driver of the stolen vehicle was identified as Yheresis Millan." Pl.'s L.R. 56(a)(1) Stmt. ¶ 13, ECF No. 19-2, at 5.

The record also establishes that Millan's use of the Audi led to the collision underlying Kelo's claims and resulted in criminal charges and a later guilty finding for stealing the vehicle. Pl.'s L.R. 56(a)(1) Stmt. ¶¶ 15–17 ECF No. 19-2 *Id*. at 5–6 (Mr. Kelo testified that "Mr. Millan intentionally struck Mr. Kelo's police vehicle," that Millan was arrested for "larceny in third degree for motor vehicle theft," among other charges, and that "Mr. Millan was found guilty of stealing Ms. Silliman's vehicle.").

Further uncontradicted record evidence establishes that "Yheresis Millan took the motor vehicle owned by the defendant, Jeanne Silliman," and then "drove the motor vehicle owned by Jeanne Silliman into the motor vehicle operated by the plaintiff and then fled." Ex. F, ECF No. 19-8, at 11.  Likewise, "Yheresis Millan stole Jeanne Silliman's motor vehicle and did not have Jeanne Silliman's permission to operate her motor vehicle." Compl. ¶ 21, ECF No. 1, at 7.

On this record, even drawing all permissible inferences in Kelo's favor, there is only one reasonable conclusion: Millan lacked a reasonable belief that he was entitled to operate Silliman's vehicle. *See Dufort v. City of New York*, 874 F.3d 338, 343 (2d Cir. 2017) (stating that the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought"); *Anderson*, 477 U.S. at 250 (stating that

9

summary judgment may be granted "if, under the governing law, there can be but one reasonable conclusion as to the verdict").

Since Millan was "using a vehicle without a reasonable belief that that insured is entitled to do so," the Auto Policy exclusion applies, and Amica has no duty to defend or indemnify him under the Auto Policy for Kelo's claims in the underlying action. Pl.'s L.R. 56(a)(1) Stmt. ¶ 4, ECF No. 19-2, at 1–2 (quoting the Auto Policy exclusion for "[u]sing a vehicle without a reasonable belief that that insured is entitled to do so"); Compl. ¶¶ 22–23, ECF No. 1, at 8 (alleging that "Amica has no duty to defend" and "Amica has no duty to indemnify" Millan under the Auto Policy because coverage is excluded).

Accordingly, Amica's motion for summary judgment on its declaratory judgment claim under the Automobile Policy will be granted

## B.  The Declaratory Judgment Claim on the Umbrella Policy

The Umbrella Policy defines an insured to include "[a]ny person using an 'auto' . . . which is owned by you and covered under this policy," and provides defense coverage if "a claim is made or a suit is brought against an 'insured' for damages because of 'bodily injury' or 'property damage' caused by an 'occurrence' . . . to which this policy applies." Pl.'s L.R. 56(a)(1) Stmt. ¶ 5, ECF No. 19-2, at 3–4 (quoting the Umbrella Policy definition of insured and the defense provision stating that Amica "[w]ill provide a defense at our expense" if a suit is brought against an "insured" for damages to which the policy applies). The policy, however, excludes coverage for "[a] person using an 'auto' . . . without a reasonable belief that that person is entitled to do so." *Id.* at 5 (quoting the exclusion for "[a] person using an 'auto' . . . without a reasonable belief that that person is entitled to do so").

Amica alleges that, although Millan may initially qualify as an insured because he was "any person using an 'auto' . . . which is owned by you and covered under this policy," his use falls within the exclusion because he lacked a reasonable belief that he was entitled to operate the Audi. Compl. ¶ 26, ECF No. 1, at 8 (alleging that "there is no coverage available to Yheresis Millan because although he may qualify as an 'insured' under Jeanne Silliman's Umbrella Policy . . . his use of the auto falls within the exclusion").

Kelo again has submitted no opposition materials, and in his Answer, as to Count Two, he states that he "lacks sufficient knowledge and leaves the Plaintiff to their burden of proof." Answer ¶¶ 25–29, ECF No. 13, at 3 (stating, as to Count Two, that Kelo "lacks sufficient knowledge and leaves the Plaintiff to their burden of proof").

Amica argues that, for the same reasons that summary judgment was warranted on its declaratory judgment claim as to the Automobile Policy, it also is entitled to summary judgment on its declaratory judgment claim as to the Umbrella Policy. Pl.'s Mem. in Supp. of Mot. for Summ. J., ECF No. 19-1, at 11–12 (arguing that, because Millan "was convicted for stealing the insured vehicle," "the exclusions for non-permissive use in both the PAP Policy and the PULP Policy apply and there is no coverage for Mr. Millan under either policy").

The Court agrees.

As discussed above, on this record, there is no genuine dispute of material fact as to whether Millan had a reasonable belief that he was entitled to operate Silliman's vehicle under the Umbrella Policy; he did not. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (stating that a party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record materials "which it believes demonstrate the absence of a genuine issue of material fact"); *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 248 (1986) (stating that "[t]he substantive law will identify which facts are material" and that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment").

As a result, because Millan was using the covered auto "without a reasonable belief that that person is entitled to do so," the Umbrella Policy exclusion applies, and Amica has no duty to defend or indemnify him under the Umbrella Policy for Kelo's claims in the underlying action. Pl.'s L.R. 56(a)(1) Stmt. ¶ 5, ECF No. 19-2, at 5 (quoting the Umbrella Policy exclusion for "[a] person using an 'auto' . . . without a reasonable belief that that person is entitled to do so"); Compl. ¶¶ 28–29, ECF No. 1, at 8–9 (alleging that "Amica has no duty to defend" and "Amica has no duty to indemnify" Millan under the Umbrella Policy because coverage is excluded).

Accordingly, Amica's motion for summary judgment as to its declaratory judgment claim as to the Umbrella Policy will be granted.

## IV. CONCLUSION

For the reasons set out above, Amica Mutual Insurance Company's motion for summary judgment, ECF No. 19, is **GRANTED.**

Amica Mutual Insurance Company has no duty to defend or indemnify Yheresis Millan under either Jeanne Silliman's Personal Automobile Policy or Jeanne Silliman's Personal Umbrella Liability Policy for claims asserted by Jonathan Kelo in the underlying action arising from the June 18, 2022 incident.

The Clerk of Court is respectfully directed to enter judgment in favor of Amica Mutual Insurance Company and to close this case.

**SO ORDERED** at New Haven, Connecticut, this 28th day of March, 2026.

12

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE